# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RENE ARTURO LOPEZ, et al.** ) | **CIVIL ACTION NO: 08-1989(RMU)** |
| ) | |
| *Plaintiffs*, ) | |
| -*v.*- ) | **PLAINTIFFS' MOTION TO FILE** |
| ) | **SUR-REPLY** |
| **COUNCIL ON AMERICAN-ISLAMIC** ) | |
| **RELATIONS ACTION NETWORK, INC., et al.** ) | |
| ) | |
| *Defendants*. ) | |

Plaintiffs hereby move the Court for an order permitting the Plaintiffs to file a sur-reply to the Reply filed by Defendants Council on American-Islamic Relations Action Network, Inc., Zahara Investment Corporation, Greater Washington LLC Delaware, Khalid Iqbal, Ibrahim Hooper, Amina Rubin, Nihad Awad, Parvez Ahmed, Khadijah Athman, and Nadhira Al-Khalili (collectively "CAIR Defendants") on February 18, 2009, based upon the attached Memorandum of Points and Authorities and proposed Sur-Reply attached thereto.

Dated this 25th day of February 2009.

Respectfully submitted,

By:   /s/ David Yerushalmi

David Yerushalmi
District of Columbia Bar No. 978179
LAW OFFICES OF DAVID YERUSHALMI
P.O.B. 6358
Chandler, Arizona 85246
david.yerushalmi@verizon.net
Tel: (646) 262-0500
Fax: (801) 760-3901
Attorneys for Plaintiffs

1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RENE ARTURO LOPEZ, et al.** ) | CIVIL ACTION NO: 08-1989(RMU) |
| ) | |
| *Plaintiffs*, ) | |
| -*v.*- ) | PLAINTIFFS' MEMORANDUM OF |
| ) | POINTS AND AUTHORITIES IN |
| **COUNCIL ON AMERICAN-ISLAMIC** ) | IN SUPPORT OF MOTION TO |
| **RELATIONS ACTION NETWORK, INC., et al.** ) | FILE SUR-REPLY |
| ) | |
| *Defendants*. ) | |

## I.  PRELIMINARY STATEMENT

Defendants Council on American-Islamic Relations Action Network, Inc. ("CAIR National"), Zahara Investment Corporation ("Zahara"), Greater Washington LLC Delaware ("GW LLC"), Khalid Iqbal, Ibrahim Hooper, Amina Rubin, Nihad Awad, Parvez Ahmed, Khadijah Athman, and Nadhira Al-Khalili (collectively "CAIR Defendants") filed their Motion to Dismiss on January 15, 2009. The Plaintiffs filed their Response in opposition to the motion on February 1, 2009. Defendants filed their Reply on February 18, 2009.

However, the CAIR Defendants' Reply makes an argument not raised in their original Motion based upon case law not cited in the Motion. Specifically, Defendants' Reply makes the legal argument that as a matter of law the CAIR Defendants cannot be liable for the Plaintiffs' damages because as late joiners to a conspiracy, they are not liable for damages

caused prior to the time they joined the conspiracy. The Reply cites to *Albright v. Attorney's Title Insurance Fund*, 504 F. Supp.2d 1187 (D. Utah 2007)[1] to support this proposition.

While the original Motion had incorrectly read the Complaint to consist of two separate schemes—one being the Days' Fraud and the other a separate cover-up by the CAIR Defendants—to which the Plaintiffs responded in their opposition papers, the CAIR Defendants used the Reply to make the quite distinct legal argument, citing *Albright*, that as a matter of law co-conspirators involved in a cover-up cannot be liable for damages arising from the underlying crime that occurred before they joined the conspiracy.

This argument is wrong on three grounds: [1] this is a misstatement of RICO conspiracy law and the general law of conspiracy; [2] the CAIR Defendants' treatment of *Albright* misconstrues both the *Albright* facts and holding; and [3] *Albright* is patently not applicable to the facts alleged in the Complaint.

## II.   STANDARD FOR GRANTING MOTION TO FILE SUR-REPLY

This Court has held that the basis for granting a motion for leave to file a Sur-Reply is "'whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply.' *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56 at 61 (D.D.C. 2001). The court may permit the filing of a surreply at its discretion. *American Forest & Paper Ass'n v. United States Envtl. Prot. Agency*, 1996 U.S. Dist. LEXIS 13230, 1996 WL 509601, at *3 (D.D.C. 1996)." *Groobert v. President & Dirs. of Georgetown College*, 219 F. Supp. 2d 1, 13 (D.D.C. 2002) (Urbina, J.).

In their opposition to the Motion to Dismiss, Plaintiffs properly and fully responded to the factual misreading of the Complaint as set forth in the Motion to Dismiss. It would

---

[1] The CAIR Defendants' Reply improperly cites the *Albright* case as 504 F. Supp. 1187 (citing to the Federal Supplement rather than to the Federal Supplement, Second Series).

have required an extremely active imagination for Plaintiffs to have anticipated that the Defendants would have used the opportunity of a reply to convert that argument into a legal one and to do so by relying on a case that is factually irrelevant to the allegations as alleged in the Complaint and one not cited in their original Motion. Further, while mindful of the Court's workload, insofar as the Court has not yet set oral argument, there is little downside and significant advantage for judicial economy to allow Plaintiffs to file a very brief response to this one discreet issue.

### III.     CONCLUSION

Wherefore, for the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs Motion for Leave to File a Sur-Reply to the CAIR Defendants' Motion to Dismiss.

.

Dated this 2nd day of March 2009.

Respectfully submitted,

By:   /s/ David Yerushalmi

David Yerushalmi
District of Columbia Bar No. 978179
LAW OFFICES OF DAVID YERUSHALMI
P.O.B. 6358
Chandler, Arizona 85246
david.yerushalmi@verizon.net
Tel: (646) 262-0500
Fax: (801) 760-3901
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RENE ARTURO LOPEZ, et al.** ) | **CIVIL ACTION NO: 08-1989(RMU)** |
| ) | |
| *Plaintiffs*, ) | |
| *-v.-* ) | **PLAINTIFFS' SUR-REPLY** |
| ) | **IN FURTHER OPPOSITION** |
| **COUNCIL ON AMERICAN-ISLAMIC** ) | **TO MOTION TO DISMISS** |
| **RELATIONS ACTION NETWORK, INC., et al.** ) | |
| ) | |
| *Defendants*. ) | |

## PLAINTIFFS' SUR-REPLY

## MEMORANDUM OF POINTS AND AUTHORITIES

David Yerushalmi
District of Columbia Bar No. 978179
LAW OFFICES OF DAVID YERUSHALMI
P.O.B. 6358
Chandler, Arizona 85246
david.yerushalmi@verizon.net
Tel: (646) 262-0500
Fax: (801) 760-3901

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.  PRELIMINARY STATEMENT ......................................................................................... 1

II. LATE JOINER CO-CONSPIRATORS ARE LIABLE FOR THE DAMAGES ARISING PRIOR TO THEIR JOINING THE CONSPIRACY .......................................................... 2

    A.  RICO Civil Conspiracy Issues are Guided by Common Law Civil Conspiracy Law and Specifically by Clayton Act Jurisprudence ................................................................ 2

    B.  Under Civil Conspiracy Law and Antitrust Law, a Late Joining Co-Conspirator is Liable for all Damages Caused "by reason of" the Conspiracy Before and After Joining the Scheme ................................................................................................................. 3

    C.  Albright Does Not Craft a New Causation Conspiracy Rule ....................................... 5

    D.  Even Assuming the RICO Defendants are Liable Only for Damages Caused After They Joined the Conspiracy, the Complaint Alleges the Plaintiffs Suffered Damages Caused by the RICO Defendants Racketeering Acts ............................................................... 7

III. CONCLUSION ..................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Attorneys' Title Ins. Fund*, 504 F. Supp.2d 1187 (2007) ............................... 2, 5, 6
*Beck v. Prupis*, 529 U.S. 494 (2000) ....................................................................................... 2
*Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549 (7th Cir. 1980) ................................. 4
*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ...................................................... 3
*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) ............................................. 5
*In re Nissan Motor Corp. Antitrust Litigation*, 430 F. Supp. 231 (S.D. Fla. 1977) ................. 5
*Page v. Keeves*, 362 Ill. 64 (Ill. 1935) ..................................................................................... 4
*Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165 (4th Dist. 1997) .......... 4

**Treatises**

16 Am Jur 2d Conspiracy § 57 .................................................................................................. 3
16 Am Jur 2d Conspiracy § 68 .................................................................................................. 4

I.     **PRELIMINARY STATEMENT**[1]

In the original Motion to Dismiss ("the Motion"), the CAIR Defendants' strategic approach to attack the RICO cause of action was to reconfigure the allegations in the Complaint in an effort to bifurcate the one scheme of fraud and concealment artificially into two separate schemes. In their Opposition to the Motion, the Plaintiffs carefully demonstrated that the Complaint details a single scheme initiated by Days and later joined by the RICO Defendants. Specifically, the Complaint alleges that Days schemed (via mail and wire fraud) to conceal three categories of material facts: (i) that he was not a lawyer despite working for CAIR as their "resident attorney" and "civil rights manager"; (ii) that he had fraudulently charged for CAIR's legal services by demanding legal fees and costs from the Plaintiffs and at least 30 other victims; and (ii) that neither Days nor CAIR was providing any of the legal services he and CAIR claimed to be providing (mainly, the filing of lawsuits).

While the Complaint alleges that the Defendants CAIR National and CAIR-MD/VA had knowledge of these schemes from the outset based upon actual and imputed knowledge (i.e., *respondeat superior* and recklessness), the Complaint alleges specific facts establishing that once Defendant Iqbal, and later the other RICO Defendants learned of the Days scheme, they acquiesced in and joined the scheme to further its original and essential goals of concealment. In other words, they agreed to conceal (also via mail and wire fraud) from their client-victims, including the Plaintiffs, each of the salient material facts: (i) that Days was not a lawyer; (b) that Days charged fees fraudulently; and (c) that neither Days nor CAIR had provided the legal services as Days and CAIR had represented.

---

[1] All capitalized terms shall have the same meaning as in the Plaintiffs' Memorandum filed in Support of their Opposition to the Motion.

In the Reply filed by the CAIR Defendants, a whole new factual tack was taken and legal argument presented. Relying on *Albright v. Attorneys' Title Ins. Fund*, 504 F. Supp.2d 1187 (2007), the Reply argues that a late-joining co-conspirator is only liable for damages caused by acts of the conspiracy after the late-joiner joined the conspiracy. This, however, is not the law of RICO conspiracy; it is not the law under the Clayton Act, after which RICO was modeled; and it is not the common law of civil conspiracy which the Supreme Court has held is controlling for a civil RICO case where the RICO statute requires some clarification. More, *Albright* is patently inapposite to the case before this Court.

And, as importantly, even assuming the CAIR Defendants' version of civil conspiracy law was correct, the Complaint alleges facts establishing that Plaintiffs have been injured by reason of the racketeering acts conducted by the RICO Defendants in furtherance of the Days scheme.

## II.   LATE JOINER CO-CONSPIRATORS ARE LIABLE FOR THE DAMAGES ARISING PRIOR TO THEIR JOINING THE CONSPIRACY

**A.  RICO Civil Conspiracy Issues are Guided by Common Law Civil Conspiracy Law and Specifically by Clayton Act Jurisprudence**

It is beyond contention that to properly understand the scope of civil RICO conspiracy, especially in the analysis of causation and the extent to which co-conspirators are liable for the damages arising from acts committed in furtherance of the conspiracy, the Supreme Court has turned to common law principles of civil conspiracy. *Beck v. Prupis*, 529 U.S. 494, 500-504 (2000) (RICO civil conspiracy follows common law of conspiracy to require tortious [i.e., racketeering] injury arising from conspiracy). Further, because RICO's civil right of action, treble damages, and "by reason of" causation provisions were modeled after the Clayton Act,

2

the courts have similarly turned for guidance to the relevant jurisprudence developed by the federal courts in the antitrust area. *See, e.g.*, *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 272 (1992) ("obvious congressional adoption of the Clayton Act direct-injury limitation among the requirements of § 1964(c)").

### B. Under Civil Conspiracy Law and Antitrust Law, a Late Joining Co-Conspirator is Liable for all Damages Caused "by reason of" the Conspiracy Before and After Joining the Scheme

The hornbook rule on the liability of late joiners for damages arising from acts committed in furtherance of the conspiracy's scheme is:

> **§ 57 Nature and extent of liability**
> A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts. Each act done in pursuance of the conspiracy by one of several conspirators is, in contemplation of law, an act for which each is jointly and severally liable.
> **The joint and several liability of a conspirator applies to damages accruing prior to his or her joining the conspiracy as well as damages thereafter resulting—regardless of whether he or she took a prominent or an inconspicuous part in the execution of the conspiracy.** This liability of each member of a conspiracy for the damage resulting therefrom exists whether or not the conspirator profited from the result of the conspiracy. **Before a person who joins an existing conspiracy will be held liable for what was previously done pursuant to the conspiracy, however, it must be shown that he or she joined the conspiracy with knowledge of the unlawfulness of its object or of the means contemplated.**
> A conspirator who withdraws from a conspiracy is not responsible for subsequent acts committed by his or her former confederates. In order for a conspirator to avoid liability by withdrawing prior to the commission of an overt act he or she must act in good faith and his or her withdrawal must be complete and voluntary. It must be effected by some affirmative act, and bring home the fact of his or her withdrawal to his or her confederates; a mere intent to withdraw is insufficient. (Emphasis added.)

16 Am Jur 2d Conspiracy § 57 (footnotes omitted). And,

> **§ 68 Evidence; burden of proof**
> The plaintiff in a civil conspiracy case must prove his or her case by a preponderance of the evidence, or (as has sometimes been held) by clear and convincing evidence.

3

> A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators, or by circumstantial evidence. The circumstances, however, must do more than create a mere suspicion of the existence of a conspiracy. They must be such that ordinary people of sound mind may reasonably deduce therefrom that there was a conspiracy.
>
> The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators. A civil conspiracy claim will fail where the evidence is insufficient to establish concerted action or agreement between the parties, wrongful acts, or other essential elements of civil conspiracy.
>
> **Evidence of acts occurring prior to the time defendant joined an existing conspiracy are admissible not only to show defendant's responsibility for those acts but also to show the scope and nature of the conspiracy.** (Emphasis added.)

16 Am Jur 2d Conspiracy § 68 (footnotes omitted). Thus, confronting precisely the same argument the RICO Defendants make in their Reply, an Illinois appellate court found a late-joiner liable for prior tortious acts even though there were no further acts causing damages after it joined the conspiracy. The court, citing an earlier Illinois Supreme Court case, held:

> "Where one assists in the commission of a wrongful act against another, or with knowledge approves of it after it is done, if done for his benefit, and he avails himself of the fruits of such improper conduct, he is liable in the same manner as if he himself had committed the same wrongful act."

*Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 175 (4th Dist. 1997) (quoting *Page v. Keeves*, 362 Ill. 64, 73 (Ill. 1935)).

The federal courts examining the issue of late-joiner liability for damages arising from tortious acts prior to joining the scheme in an antitrust environment are also unambiguous. Having joined a conspiracy through an explicit or implicit agreement knowing of the prior criminal or tortious acts with the desire to further the overall purposes of the conspiracy, the late joiner is liable for all damages caused by reason of the conspiracy including those damages caused prior to the defendant's joining the conspiracy. *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (7th Cir. 1980) ("It is well recognized that a co-conspirator who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same

4

objectives may, in the antitrust context, be charged with the preceding acts of its co-conspirators."); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 539 (D.N.J. 2004) ("Those who come on later and co-operate in the common effort to obtain the unlawful results become parties thereto and assume responsibility for all done before."); and *In re Nissan Motor Corp. Antitrust Litigation*, 430 F. Supp. 231, 232 (S.D. Fla. 1977) ("In non-class actions, late-comers to antitrust conspiracies, who, while knowing of the prior existence of the conspiracy, join it in order to promote the unlawful object for which it was organized, are liable for everything done during the period of the conspiracy's existence.")

### C.  Albright Does Not Craft a New Causation Conspiracy Rule

Although the CAIR Defendants would like *Albright* to ride in from the West to save them from their predicament, it simply doesn't leave the corral. First, the *Albright* decision follows a highly litigated motion for summary judgment after extensive discovery and a full day of oral arguments. 504 F. Supp. 2d at 1194. Second, the *Albright* court's opinion surveys quite carefully the full panoply of evidence presented to find that there was simply no evidence whatsoever that the title company defendant had entered into any conspiratorial agreement with the individuals ultimately convicted of criminal fraud that would allow the court to hold the title company responsible for any damages that occurred prior to their discovery of the criminal fraud. *Id*. at 1195-1208.

Specifically in *Albright*, a group of attorneys in Utah and others working with them engaged in a variety of fraudulent schemes arising out of real estate closings and investments. It so happens that the attorneys were also working as agents of the defendant title company, but the specific criminal scheme had no connection with their work as title insurance agents for the defendant. When the title insurance company discovered some irregularities, they investigated

5

and eventually uncovered the fact that their agents had been involved in a widespread criminal scheme, albeit not arising out of their agency work for the defendant title insurance company. *Id.*

The title insurance company sued the agents to separate from them and to demand an accounting, made the necessary reports to the state insurance officials, and added liquidity from its parent company to cover title insurance claims that might arise from claims under the title policies insuring the fraudulent deals. *Id.* at 1199.

When the plaintiff-victims sued, they named the title insurance company as a deep pocket. They claimed that the defendant insurance company's acts to "clean up" the problems their agents had caused, even though the agents committed the frauds wholly unrelated to their agency, were in effect committed as a "clean up" conspiracy with the crooked agents. But the court found incredulous and without evidence the allegation that there was an agreement at any time involving the title insurance company to pursue the original purpose of the criminal fraud. *Id.* at 1208. In other words, the court held that at best there was evidence of a criminal scheme by bad actors and a subsequent unrelated decision to "clean up" and separate from the bad actors. But precisely because the title insurance company had done nothing to "cover up" or pursue the original criminal purposes—that is, it didn't try to conceal the fraud initially concealed by the crooked lawyers—the court concluded that it could not be responsible for the prior bad acts. *Id.*

The facts and holding in *Albright* are simply not applicable to the present action. First, Days' original scheme was to conceal (i) that he was not a lawyer; (ii) that his charging legal fees on behalf of CAIR was fraudulent, and (iii) that he was not handling the plaintiffs' legal files as he and CAIR were representing. Second, this scheme arose directly out of Days' relationship and activity as a CAIR employee-agent. Third, as the RICO Defendants learned of

6

Day's scheme, they specifically agreed to acquiesce in and join the conspiracy to accomplish the overall purposes of the scheme—to wit, to continue to conceal exactly what Days had concealed from the start and to do so through continued racketeering acts (i.e., mail and wire fraud). While Days and the RICO Defendants might have had different motivations, they most certainly pursued exactly the same overall purposes—concealing the fraud through racketeering acts—and did so in a coordinated fashion as the Plaintiffs' Response makes clear. This is why the RICO Defendants never informed the plaintiffs that Days was not a lawyer or that he was not handling their legal matters, even though they had a duty to do so. In fact, CAIR officials acting on behalf of the RICO Defendants instructed three of the Plaintiffs to turn to Days for continuing legal assistance even after CAIR had terminated Days' employment. The Complaint also alleges facts allowing the reasonable inference that Days and the RICO Defendants continued the common conspiracy long after his termination. (See, specifically, Plaintiffs' Response to Motion at 12-14.)

Unlike *Albright*, the original Days scheme arose directly out of his employment with CAIR and it was this association with the RICO Defendants that motivated them to pursue the same scheme for the same purposes through a common conspiracy. There is no basis to immunize their behavior by accepting the Defendants' call for a new civil conspiracy rule.

### D.  Even Assuming the RICO Defendants are Liable Only for Damages Caused After They Joined the Conspiracy, the Complaint Alleges the Plaintiffs Suffered Damages Caused by the RICO Defendants Racketeering Acts

The RICO Defendants make the argument that they cannot be liable for any of the damages suffered by the Plaintiffs because the sole source of the harm suffered by the Plaintiffs was the money fraudulently obtained by Defendant Days and this occurred before

7

they joined the conspiracy. But this is not what the Complaint alleges. In addition to the direct money damages, Plaintiffs suffered damages to their "business or property" by virtue of two salient and relevant acts by the RICO Defendants. First, they engaged in mail and wire fraud to conceal the fact that the Plaintiffs had a claim against both Days and CAIR for the monies paid. (See, e.g., Complaint at ¶¶ 32, 37-40.) This is not some contingent or speculative claim nor can the RICO Defendants argue at this stage that they did not owe the Plaintiffs a duty to disclose the truth. Second, by instructing the Plaintiffs to continue to work with Days post-termination (or, in the case of Plaintiff Nur, by informing her that CAIR National would continue to handle her legal matters), the Plaintiffs' relied on lawsuits to protect their business and property interests that had in fact never been filed. (Complaint at ¶¶ 65, 79-84, 102-104.) The Complaint alleges sufficiently these facts to put the RICO Defendants on notice of damages arising from these non-filed legal actions especially since the Plaintiffs were CAIR clients. Discovery will determine the extent of these damages, which are ongoing.

### III.   CONCLUSION

Wherefore, for the foregoing reasons, Plaintiffs respectfully request that the Court deny the CAIR Defendants' Motion to Dismiss.

Dated this 2nd day of February 2009.           Respectfully submitted,

                                                 By:   /s/ David Yerushalmi
                                                       David Yerushalmi
                                                       District of Columbia Bar No. 978179
                                                       LAW OFFICES OF DAVID YERUSHALMI
                                                       P.O.B. 6358
                                                       Chandler, Arizona 85246
                                                       david.yerushalmi@verizon.net
                                                       Tel: (646) 262-0500
                                                       Fax: (801) 760-3901
                                                       *Attorneys for Plaintiffs*