**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| RENE ARTURO LOPEZ *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 08-1989 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 11, 16, 24 |
| | : | | |
| COUNCIL ON AMERICAN-ISLAMIC | : | | |
| RELATIONS ACTION NETWORK, | : | | |
| INC. *et al.,* | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING THE PLAINTIFFS' MOTION TO FILE A SUR-REPLY;
GRANTING THE CAIR DEFENDANTS' MOTION TO DISMISS;
GRANTING DEFENDANT GORAYA'S MOTION TO DISMISS**

**I. INTRODUCTION**

This matter is before the court on the defendants' motion to dismiss the plaintiffs'

complaint.  The plaintiffs brought this action against the Council on American-Islamic Relations

Action Network, Inc. ("CAIR"); Zahara Investment Corporation ("Zahara"); Greater Washington

LLC of Delaware ("GW LLC"); Khalid Iqbal, the Managing Director of CAIR

Maryland/Virginia ("CAIR MD/VA"); Ibrahim Hooper, CAIR's Director of Communications;

Amina Rubin, CAIR's Coordinator of Communications; Nihad Awad, CAIR's Executive

Director and an authorized signatory of GW LLC; Parvez Ahmed, CAIR's Chairman of the

Board; Khadijah Athman, the Manager of the Civil Rights Division at CAIR; Nadhira Al-Khalili,

CAIR's in-house legal counsel;[1] Tahra Goraya, CAIR's National Director; and Morris Days, the

---

[1]     The parties refer to the aforementioned defendants as the "CAIR Defendants."  *See generally*
Defs.' Mot; Pls.' Opp'n.  Defendant Goraya was not served with process until after the CAIR
Defendants filed their motion to dismiss.  See Aff. of Return of Service oh Tahra Goraya (June
11, 2009).

Resident Attorney of CAIR MD/VA.  The plaintiffs allege that the defendants conspired to

violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d),

violated the D.C. Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 28-3901 *et*

*seq.*, and violated the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-196 *et*

*seq.*  The plaintiffs also allege claims of common law fraud and aiding and abetting fraud, breach

of fiduciary duty, intentional infliction of emotional distress, conversion and unjust enrichment.

Because the court concludes that the plaintiffs do not have standing to bring a RICO claim, the

court dismisses that claim with prejudice.  The court accordingly dismisses the seven other state

law claims without prejudice for want of jurisdiction.


## II.  BACKGROUND

### A.  Factual History[2]

CAIR operates as a public interest law firm with various regional and local offices around

the country.  Compl. ¶ 21.  In or around December 2004, CAIR opened CAIR MD/VA, its local

office in based Herndon, Virginia.  *Id*. ¶ 2.  In or around June 2006, CAIR MD/VA hired Days as

its Resident Attorney and Manager of its Civil Rights Department.  *Id.*  Days's job was to

provide legal representation to Muslims alleging of civil rights abuses.  *Id.*  Days, however, had

never been to law school and was not licensed to practice law.  *Id*. ¶ 25.  The plaintiffs allege that

Days, with the intent to defraud CAIR clients, represented that he was a competent attorney and

---

2       For the purposes of this opinion the court must treat the complaint's factual allegations –
        including mixed questions of law and fact – as true and draw all reasonable inferences therefrom
        in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy
        Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292
        F.3d 235, 242 (D.C. Cir. 2002).

charged over thirty clients for legal services despite the fact that he was not a lawyer and did not

perform any legal services. *Id*. ¶¶ 25-27, 35.

By November 2007, Iqbal, the managing director of CAIR MD/VA, had allegedly

learned that Days was collecting legal fees in violation of CAIR's policy of representing its

clients pro bono. *Id*. ¶ 32. CAIR MD/VA had received numerous complaints about Days's

handling of CAIR clients' legal matters and terminated Days's employment on February 10,

2008. *Id*. ¶¶ 34-35.

On or about February 8, 2008, Iqbal called and/or e-mailed Ahmed, Awad, Goraya and

other unnamed officials at CAIR informing them about Days's actions. *Id*. ¶¶ 37, 82. Soon

thereafter, Ahmed, Awad, Goraya and other unnamed officials of CAIR informed Athman and

Khalili of Days's actions. *Id.*

In or around February 2008, Iqbal, Ahmed, Awad, Goraya, Athman and Khalili allegedly

decided to take affirmative steps to conceal the scheme from the victims. *Id*. ¶ 38. These

defendants allegedly agreed to inform the victims of the scheme only that Days was no longer at

CAIR MD/VA and that any complainants must speak to Days directly to address their concerns.

*Id*. ¶ 39. Over time, as complaints mounted, the defendants purportedly agreed that they would

provide partial restitution to the most vocal victims. *Id*. ¶ 41. They also allegedly agreed that

they would not disclose the fraud to any law enforcement or other government agency. *Id.*

Before any restitution was paid, the defendants required that every person receiving

restitution sign a document entitled "Voluntary Agreement and Release of Claims." *Id*. ¶ 42.

The document absolved CAIR of any civil liability arising out of its prior or future representation

of former or current clients, and stipulated to a $25,000 penalty for any person who disclosed the

events involving the scheme.  *Id*. ¶¶ 42, 45, 48.

In response to a widely published report on the scheme, defendants Iqbal, Awad, Goraya, Athman, Khalili, Hooper and Rubin ("RICO Defendants")[3] published a press release on the CAIR website.  *Id*. ¶ 106.  The press release stated that Days was terminated immediately after the scheme was discovered and that the CAIR MD/VA offices reached out to defrauded CAIR clients by offering them compensation and referring them to outside attorneys.  *Id*. ¶ 107.

## B.  Procedural History

The plaintiffs filed a complaint on November 11, 2008, alleging conspiracy to violate RICO, violation of the DCCPPA, violation of the VCPA, common law fraud and aiding and abetting fraud, breach of fiduciary duty, intentional infliction of emotional distress, conversion and unjust enrichment.  *See generally* Compl.  The CAIR Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 15, 2009, *see generally* Defs.' Mot.  The plaintiffs filed an opposition on February 1, 2009, *see generally* Pls.' Opp'n, to which the defendant replied to on February 18, 2009, *see generally* Defs.' Reply.  The plaintiffs filed a motion seeking leave to file a sur-reply on February 25, 2009, *see generally* Pls.' Mot. to File a Sur-Reply, which the defendants opposed on March 11, 2009, *see generally* Defs.' Opp'n to Pls.' Mot. to File a Sur-Reply.  On June 25, 2009, defendant Goraya filed a motion to dismiss, joining in the arguments made by the CAIR Defendants in their motion.  Def. Goraya's Mot. to Dismiss at 1.  The plaintiffs, likewise, incorporated by reference their opposition to the CAIR Defendants' motion in opposition to defendant Goraya's motion.  Pls.' Opp'n to Def. Goraya's Mot. to Dismiss at 1.  The court now turns to the parties' arguments.

---

3       The plaintiffs state that they mistakenly neglected to name Ahmed as a RICO Defendant but plan to file an amended complaint doing so.  Pls.' Opp'n at 2.

### III.  ANALYSIS

### A.  The Court Grants the Plaintiffs' Motion to File a Sur-Reply

The plaintiffs argue that they should be granted leave to file a sur-reply because, in their reply, the defendants brought up the novel legal argument that co-conspirators in a cover-up cannot be liable for damages arising from the underlying crime.  Pls.' Mot. to File Sur-Reply at 2.  The defendants counter that the plaintiffs' sur-reply raises legal issues not previously addressed and therefore the motion to file a sur-reply should be denied.  Defs.' Opp'n to Pls.' Mot. to File Sur-Reply at 2.

It is within the court's authority to grant leave to file a sur-reply when "the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).  The court may permit the filing of a sur-reply at its discretion.  *Am. Forest & Paper Ass'n v. Envtl. Prot. Agency*, 1996 WL 509601, at *3 (D.D.C. Sept. 4, 1996).  Because the plaintiffs' sur-reply is "helpful to the adjudication" of the motion to dismiss and because it is not "unduly prejudicial to the defendants," the court grants the plaintiffs' motion to file a sur-reply.  *Id*.  The court further notes that it will not consider matters raised for the first time in the plaintiffs' sur-reply.  *See Tnaib v. Document Tech., LLC*, 450 F. Supp. 2d 87, 89 n.3 (D.D.C. 2006) (observing that it is inappropriate to raise new substantive issues in a sur-reply).

**B. The Court Grants the Defendants' Motions to Dismiss the Plaintiffs' RICO Claim**

**1.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)[4]**

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

---

4    Although the defendants styled their motion as one to dismiss pursuant to Rule 12(b)(6), *see* Def.'s Mot. at 1., because, as discussed below, the court determines that the plaintiffs do not have standing to bring a RICO claim, the court dismisses that claim for lack of jurisdiction pursuant to Rule 12(b)(1).  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (holding that injury is a prerequisite to establishing standing); *see also Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (noting that proximate cause between the predicate acts and the injury is required in a civil RICO claim); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (reaffirming *Holmes*).

6

claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## 2.  Legal Standard for Conspiracy to Violate RICO

A person commits conspiracy to violate RICO if he or she "conspire[s] to violate any of the provisions of subsection (a), (b), or (c) of [18 U.S.C. § 1962]." 18 U.S.C § 1962(d). "A violation of § 1962(c) of the RICO Act consists of four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[5] *W. Assocs. Ltd. P'ship v. Market Square Assoc.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (quoting *Pyramid Sec. Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1117 (D.C. Cir. 1991)). Racketeering activity, as defined by Congress, includes the predicate acts of mail fraud (a violation of 18 U.S.C. § 1341) and wire fraud (a violation of 18 U.S.C. § 1343). *See* 18 U.S.C. § 1961 (listing all offenses that qualify as predicate acts which constitute racketeering activity).

RICO includes a civil enforcement provision "authoriz[ing] a private suit by '[a]ny person injured in his business or property by reason of a violation of § 1962.'" *Sedima, S.P.R.L.*

---

5        Section 1962(c) reads:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

*v. Imrex Co.*, 473 U.S. 479, 495 (1985) (citing 18 U.S.C. § 1964(c)).  Injury to a person's business or property is required for a civil plaintiff to demonstrate standing.  *Id.* at 496.  "A showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction."  *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  For a plaintiff to have standing, he must demonstrate that a defendant's predicate acts were the proximate cause of his injury.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (noting that proximate cause between the predicate acts and the injury is required in a civil RICO claim); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (reaffirming *Holmes*).

"The RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence."  *Elemary v. Philipp Holtzmann A.G.*, 533 F. Supp. 2d 116, 140 (D.D.C. 2008) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23-24 (2d Cir. 1990)).  "Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts."  *Sedima*, 473 U.S. at 497.  The harm must be concrete and actual or imminent, not conjectural or hypothetical.  *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

Furthermore, in order to state a valid RICO claim, a plaintiff must plead sufficient facts indicating that the defendant engaged in a "pattern" of racketeering activity.  18 U.S.C. § 1962(c).  To constitute a "pattern" there must be at least two acts of racketeering activity that have occurred within ten years of each other.  18 U.S.C. § 1961(5).  In addition, the Supreme

Court has required plaintiffs to allege a "relationship" between the predicate acts (the

"relationship requirement") as well as a "threat of continuing activity" (the "continuity

requirement") to illustrate a "pattern of racketeering activity." *H.J. Inc. v. NW. Bell Tel. Co.*, 492

U.S. 229, 239 (1989) (internal quotation omitted).

The "relationship requirement" demands "criminal acts that have the same or similar

purposes, results, participants, victims, or methods of commission, or otherwise are interrelated

by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240 (quoting

18 U.S.C. § 3575(e)). The "continuity requirement" requires that "the predicates themselves

amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity." *Id.*

(emphasis in original). "The Court said that the [continuity] concept . . . refers 'either to a closed

period of repeated conduct, or to past conduct that by its nature projects into the future with a

threat of repetition.'" *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260,

1264 (D.C. Cir. 1995) (quoting *H.J. Inc.*, 492 U.S. at 242).

This Circuit has adopted the six factor analysis of the Third Circuit when determining

whether the closed-ended continuity requirement has been established. *See Edmondson*, 48 F.3d

at 1265. The six factors to be considered are "[1] the number of unlawful acts, [2] the length of

time over which the acts were committed, [3] the similarity of the acts, [4] the number of

victims, [5] the number of perpetrators, and [6] the character of the unlawful activity." *Kehr*

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412-13 (3d Cir. 1991) (quoting *Barticheck v.*

*Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987)). "In some cases . . . some

factors will weigh so strongly in one direction as to be dispositive." *Edmondson*, 48 F.3d at

1265. In addition, "[t]he six factors prescribed in *Edmondson* should be applied in a manner that

is fluid, flexible, and commonsensical, rather than rigid or formulaic." *W. Assocs. Ltd. P'ship*, 235 F.3d at 637. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the closed period] requirement." *H.J. Inc.*, 492 U.S. at 242.

**3. The Plaintiffs' Injuries Were Not Caused "By Reason Of" the Defendants' Actions**

The plaintiffs contend that they have suffered monetary losses because of the RICO Defendants' actions. *See generally* Pls.' Opp'n. Specifically, plaintiffs Turner and Lopez gave $850 in cash and provided $350 worth of services to Days to handle their divorce and immigration matters respectively. Compl. ¶ 73-76. Plaintiff Abdussalaam wired Days $200 via Western Union (and paid a $23.99 surcharge) for Days to file a lawsuit on his behalf. *Id.* ¶ 57. Plaintiff Nur did not give any money to Days but, upon his advice, refused an offer by her then employer, Star Tek, to transfer her to another department. *Id.* ¶ 92. As a result, Nur had to relocate her family to North Carolina to find employment and suffered $7,425 in lost wages and $1,500 in moving expenses. *Id.* ¶ 124.

The RICO Defendants argue that their alleged efforts to cover up Days's scheme were not the proximate cause of the plaintiffs' monetary injuries. Defs.' Mot. at 13-14. In the complaint, the plaintiffs allege that all of the defendants, from February 2008 to September 2008, conspired with one another to conceal the fact that Days was not a lawyer and that the plaintiffs had been victims of his fraud and, as part of that cover-up, perpetrated mail and wire fraud. *See generally* Compl. Yet the plaintiffs' monetary losses were incurred between July 2007 and November 2007, *id.* ¶¶ 58, 75, 76, 88-93, at least two months before the alleged conspiracy.

The plaintiffs maintain that by February 2008, the RICO Defendants all knew about the

scheme and agreed to conceal it from the public.  *Id*. ¶¶ 37-38, 113.  "Instead of ending the Scheme, the CAIR Defendants joined it, forming a conspiracy to carry out its objectives."  Pls.' Opp'n at 19.  The plaintiffs maintain that by creating a conspiracy to cover-up Days's scheme, the defendants became co-conspirators with Days in the scheme and, as a result are responsible for the prior predicate acts of mail and wire fraud committed by Days.  *Id*. at 19-20.  The plaintiffs point to language in *Salinas v. United States* stating that "a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive offense, but it suffices that he adopt the goal of furthering the criminal endeavor."  522 U.S. 52, 65 (1997).

The defendants counter that the complaint alleges two separate schemes.  Defs.' Mot. at 11.  Specifically, they argue that the complaint alleges that Days alone perpetrated the fraud scheme and the RICO Defendants perpetrated a scheme to cover-up Days's activities.  *Id*. at 12.  In fact, the complaint alleges that it was not until after Days had been fired from the CAIR MD/VA offices that the RICO Defendants began their fraudulent conduct.  Compl. ¶¶ 65, 79, 102.

The apparent primary objective of Days's scheme was to obtain money from the plaintiffs for legal work that he never carried out.  *See generally id*.  In contrast, as the plaintiffs note, the primary purpose of the RICO Defendants' actions was to conceal the fraud to prevent CAIR from being "damaged irreparably."  *See* Pls.' Opp'n at 9.  Therefore, the complaint does not allege that the RICO Defendants endeavored to carry out the objectives of Days's scheme.  *See Salinas*, 522 U.S. at 65 (noting that a conspirator must adopt the goal of furthering the underlying criminal endeavor).

11

A sister court, in resolving an issue analogous to that presented in this case, stated:

> [A]t best, the facts suggest two separate instances of wrongdoing – the underlying agent fraud followed by an improper cover-up scheme . . . .  Even assuming the [defendants'] clean-up activities were unlawful, the [defendants] cannot be liable for losses incurred in the . . . frauds [committed by their agents] (unlawful activity A) simply because they participated in the post-fraud cover-up (unlawful activity B).  [Citation omitted].  The plaintiffs in this case lost their money in the first place because they were defrauded by [the defendants' agents] and a host of other former defendants.  Plaintiffs did not lose their money because of the clean-up actions of defendants.

*Albright v. Attorney's Title Insurance Fund*, 504 F. Supp. 2d 1187, 1204 (D. Utah 2007).

In this case, the plaintiffs have alleged two separate acts of wrongdoing, the initial fraud by Days and the subsequent cover-up by the RICO Defendants.  *See id.*; *Albright*, 504 F. Supp. 2d at 1204.  The plaintiffs' injuries were caused by Days, not by the subsequent cover up.  *See Albright*, 504 F. Supp. 2d at 1204.[6]

Even assuming that the plaintiffs could show that the RICO Defendants joined in a conspiracy to further the objectives of Days's scheme, the plaintiffs still cannot demonstrate that the RICO Defendants proximately caused the plaintiffs' monetary losses.  *See* 18 U.S.C. § 1964(c).  The plaintiffs correctly point out that the common law principles of civil conspiracy apply to a RICO civil conspiracy case.  *See Beck v. Prupis*, 529 U.S. 494, 500 (2000) (stating that "to determine what it means to be 'injured . . . by reason of' a 'conspir[acy],' we turn to the well-established common law of civil conspiracy").  In an effort to attribute Days's tortious conduct to the RICO Defendants, the plaintiffs cite *Van Winkle v. Owens-Corning Fiberglas*

---

6    The plaintiffs attempt to distinguish *Albright* by arguing that the defendant had done nothing to cover-up the fraud initially perpetrated by "the crooked lawyers."  Pls.' Sur-Reply at 5.  It is clear, however, that the *Albright* court assumed, for the purposes of summary judgment, that the defendant did attempt to cover-up the original fraud.  *See Albright*, 504 F. Supp. 2d at 1204 (noting that one of the defendants "attempt[ed] to cover up the frauds that had already occurred" and that the defendants "cannot be liable for losses incurred [as a result of the underlying] frauds . . . simply because they participated in the post-fraud cover-up").

*Corp.*, 683 N.E.2d 985, 992 (Ill. App. 4th Dist. 1997) in which an Illinois appellate court held that late-joining conspirators to a conspiracy are liable for prior tortious acts of their co-conspirators if, when they joined the conspiracy, they knew about and approved of those prior acts.  Pls.' Sur-Reply at 4.  The plaintiffs also cite several civil conspiracy cases in the antitrust context which stand for the same general proposition.  *See Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (7th Cir. 1980) (recognizing that "a co-conspirator who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same objectives may, in the anti-trust context, be charged with the preceding acts of its co-conspirators"); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 539 (D. N.J. 2004) (noting that "a co-conspirator is liable for all acts committed in furtherance of a conspiracy, regardless of when it entered the conspiracy"); *In re Nissan Motor Corp. Antitrust Litig.*, 430 F. Supp. 231, 232 (S.D. Fla. 1977) (explaining that "proof of unlawful affiliation is sufficient to render a co-conspirator liable for all damages that the conspiracy caused, regardless of the exact time defendant became a member or the extent of its participation").  The plaintiffs maintain that the RICO Defendants are liable for Days's prior tortious conduct of mail and wire fraud because they are late joining co-conspirators with Days, and they assert that his conduct, which was the proximate cause of the plaintiffs' injuries, can be attributed to the RICO Defendants.  Pls.' Opp'n at 19-20.

The plaintiffs' reliance on the law for late-joining conspirators is misplaced.  There is no allegation in the complaint that the RICO Defendants joined a pre-existing conspiracy.  *See generally* Compl.  Indeed, the plaintiffs are foreclosed from making such an assertion given that one of the essential elements of a civil conspiracy claim is an agreement between two or more persons.  *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984), *abrogated on other grounds by*

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  The complaint alleges that Days alone falsely represented that he was an attorney and schemed to take money from the plaintiffs.  Compl. ¶¶ 25, 26.  Thus the original scheme cannot constitute a conspiracy because Days was the only perpetrator of the scheme and the act of conspiring requires two or more people.  *See Hobson*, 737 F.2d at 51.  Consequently, the complaint does not allege that, upon learning about this scheme, the RICO Defendants joined an existing conspiracy, but instead alleges that the RICO Defendants joined the scheme by *forming* a conspiracy to cover it up from the public and the victims of the scheme.  Pls.' Opp'n at 19. Therefore, the plaintiffs' reliance on case law concerning the liability of late-joining conspirators to an already formed conspiracy is misplaced since no conspiracy previously existed.  *See generally* Compl.  As a result, the prior predicate acts of mail and wire fraud by Days, which led to the plaintiffs' monetary losses, cannot be attributed to the RICO Defendants through a conspiracy theory.

Finally, the plaintiffs mention in passing that the RICO Defendants' cover up actions proximately caused other, non-monetary injuries to the plaintiffs.  Pls.' Sur-Reply at 8.  They allege that they "relied on lawsuits to protect their business and property interests."  *Id.*  The plaintiffs assert that they relied on Days to vindicate their rights through lawsuits he never filed. *See generally* Compl.  The plaintiffs argue that because the RICO Defendants did not inform the plaintiffs that Days had been fired for fraud, and only informed them that Days was no longer employed at CAIR MD/VA, they caused injury to the plaintiffs' business and/or property by preventing the plaintiffs from discovering that Days had not filed their respective legal claims. *Id.*  There is, however, no allegation that the plaintiffs could not have filed lawsuits upon

learning about the fraud or cannot now file their lawsuits, or that they have been damaged in some quantifiable way by the defendants' cover-up activities. *Id.* Because the plaintiffs' alleged injury is speculative at best, the plaintiffs have not made the requisite showing that their injuries were the proximate cause of the RICO Defendants' acts. *See Byrd*, 174 F.3d at 243; *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (noting that a showing of injury requires proof of a concrete financial loss and not mere injury to an intangible property interest) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).

**4.  The Defendants' Actions Did Not Constitute a "Pattern" of Racketeering Activity**

The plaintiffs argue that they have pled sufficient facts to meet the closed-ended continuity requirement enunciated by the Supreme Court in *H.J. Inc.* because they have alleged a single scheme that involved multiple instances of mail and wire fraud, extended for over two years (counting Days's actions) and involved multiple victims.[7] *See* Pls.' Opp'n at 16.  The defendants contend that the plaintiffs have not pled sufficient facts that show that the RICO Defendants' acts constitute a "pattern of racketeering activity."[8] Defs.' Mot. at 15.

The Circuit has noted that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *W. Assocs. Ltd. P'ship*,

---

[7]    The plaintiffs state in a footnote that they have alleged sufficient facts for the open-ended continuity requirement.  Pls.' Opp'n at 18 n.24.  To satisfy this requirement, the plaintiffs must show "that the predicate[ offenses] are a regular way of conducting the defendants' ongoing legitimate business."  *H.J. Inc. v. NW. Bell Tel. Co.*, 492 U.S. 229, 243 (1989).  Aside from vague accusations that there exist other victims of Days who are unaware of the scheme, the plaintiffs do not address this factor at all in the complaint and, thus, the court determines that the plaintiffs have failed to adequately plead the open-ended continuity requirement.

[8]    The defendants do not challenge the sufficiency of the plaintiffs' allegations regarding the "relationship" requirement.  *See generally* Defs.' Mot.

235 F.3d at 637 (quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)).

As this Circuit has noted, "if a plaintiff alleges only a single scheme, a single injury, and few

victims it is 'virtually impossible for plaintiffs to state a RICO claim.'" *See id.* at 634 (quoting

*Edmondson*, 48 F.3d at 1265).  As described above, the RICO Defendants' actions allegedly

constituted one scheme, involving eleven predicate acts of mail and wire fraud, which occurred

between February and September 2008 and harmed the four plaintiffs.  *See* Pls.' Reply at 14.

Because this conduct extended for only a few months, the plaintiffs have not pled sufficient facts

to constitute a "pattern of racketeering activity."  *H.J. Inc.*, 492 U.S. at 242 (stating that

"predicate acts extending over a few weeks or months and threatening no future criminal conduct

do not satisfy" the closed-ended continuity requirement).

   Even if the court were to credit the plaintiffs' assertion that the scheme should be seen as

extending from August 2006, when Days began working at CAIR MD/VA, to September 2008,

when the RICO Defendants posted a press release about Days's scheme on their website, the

plaintiffs still have not alleged sufficient facts with respect to the closed-ended continuity

requirement.  *See W. Assocs. Ltd. P'ship*, 235 F.3d at 636.  This extended scheme includes six

additional predicate acts of mail and wire fraud by Days and lasted for about twenty-four

months.  *See generally* Compl.  In *Western Associates Ltd. Partnership*, however, the plaintiffs

alleged "dozens of predicate acts extending continually over an eight-year period."  235 F.3d at

635.  In rejecting the RICO claim, the Circuit noted that "an eight-year time period, though

highly relevant, is not dispositive."  *Id.* at 636.  "[T]he mere longevity of a scheme or schemes

does not necessarily mean that a 'pattern of racketeering activity' is present."  *Id.*  Similarly, in

*Edmondson*, the Circuit dismissed the plaintiff's claim despite the plaintiff's allegation of a

single scheme spanning three years with multiple predicate acts of mail and wire fraud and three victims. 48 F.3d at 1265.

Moreover, the plaintiffs' assertion that the scheme lasted for over two years is not dispositive with regard to the pattern requirement. *See W. Assocs. Ltd. P'ship*, 235 F.3d at 635 (recognizing that "mere longevity of a scheme or schemes does not necessarily mean that a pattern of racketeering activity is present"). The plaintiffs still allege only one scheme, spanning about two years, with only four identified victims. *See generally* Compl. Thus, the plaintiffs' have not pled sufficient facts under the precedent of this Circuit to indicate that the RICO Defendants engaged in a "pattern of racketeering activity." *See generally W. Assocs. Ltd. P'ship*, 235 F.3d at 635 (affirming the dismissal of a complaint alleging an eight year-long fraudulent scheme); *Edmondson*, 48 F.3d at 1265 (affirming the dismissal of a complaint alleging multiple victims and numerous predicate acts).[9]

**C. The Court Lacks Supplemental Jurisdiction Over the Plaintiffs' State Law Claims**

**1. Legal Standard for Exercising Supplemental Jurisdiction Over State Law Claims**

"When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise supplemental jurisdiction over related claims under state law." *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996). To determine when the assertion of supplemental jurisdiction is appropriate, the district court should apply a two-part test. *Id.* (citing *United Mine Workers of Am. v. Gibbs*,

---

[9]     The defendants also argue that the plaintiffs have failed to meet the heightened pleading requirement under Federal Rule of Civil Procedure Rule 9(b) for a conspiracy to commit RICO claim predicated on mail and wire fraud. *Id.* at 17-19. Because the court dismisses the plaintiffs' claim for failing to plead that they were injured "by reason of" the defendants' actions and failing to plead sufficient facts to indicate a pattern of racketeering activity by the defendants, the court does not reach the heightened pleading standard argument.

383 U.S. 715, 725 (1966)).  The court first must determine whether the state and federal claims derive from a common nucleus of operative fact.  *Id.*  If so, "the court has the power, under Article III of the Constitution, to hear the state claim."  *Id.*  The court then must decide whether to exercise its discretion to assert jurisdiction over the state claim.  *Id.* (noting the Supreme Court's observation that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right").  In deciding whether to assert supplemental jurisdiction over a state claim, the court should consider whether judicial economy, convenience and fairness to litigants weigh in favor of doing so.  *Id.*  A court may decline to exercise supplemental jurisdiction, however, if the state claim raises a novel or complex issue of state law, substantially predominates over the federal claims or remains after the court has dismissed the federal claims.  *Id.* at 921 (citing 28 U.S.C. § 1367(c)).

In addition, if a district court dismisses the sole federal claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), it is precluded from exercising supplemental jurisdiction over any state law claims.  *Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 351 (D.C. Cir. 1997).  If however, the district court dismisses the federal claim pursuant to Rule 12(b)(6), it may nevertheless exercise supplemental jurisdiction over the state law claims at its discretion.  *Id.*

### 2.  The Court Dismisses the Plaintiffs' State Law Claims

As previously discussed, the court dismisses the plaintiffs' sole federal claim, conspiracy to violate RICO.  *See supra* Part III.A.1.  Consequently, the court is precluded from exercising jurisdiction over the plaintiff's state law claims.  *See Saksenasingh* 126 F.3d at 351.

### IV.    CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion to file a sur-reply, grants

the CAIR Defendants' motion to dismiss and grants defendant Goraya's motion to dismiss. The

plaintiffs' RICO claims are dismissed with prejudice; all other claims are dismissed without

prejudice. An Order consistent with this Memorandum Opinion is separately and

contemporaneously issued this 28th day of September, 2009.


RICARDO M. URBINA
United States District Judge